UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IRWS, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>ELMORE COUNTY, et. al.,<br><br>        Defendants. | Case No. 1:23-cv-00485-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff IRWS, LLC's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 6) and Defendants' (collectively "Elmore County") Motion to Dismiss (Dkt. 15). The Court held oral argument on December 7, 2023, and took both matters under advisement. Upon review, and for the reasons set forth below, the Court DENIES IRWS's Motion for Preliminary Injunction and GRANTS Defendants' Motion to Dismiss.

## II. OVERVIEW AND BACKGROUND

Until recently, Plaintiff IRWS operated the Simco Road Regional Landfill ("SRRL") in Elmore County, Idaho, located between Boise and Mountain Home. The SRRL has had a tumultuous history.

MEMORANDUM DECISION AND ORDER – 1

The original owner and operator of the SRRL was Idaho Waste Systems, Inc. ("IWS"). Elmore County issued IWS a Conditional Use Permit ("CUP") for its operation of the SRRL back in 1997 and the Idaho Department of Environmental Quality ("DEQ") issued a state license for the facility the following year.

As part of those original negotiations, Elmore County and IWS entered into a Landfill Management Agreement to address, among other things, the governance and impact of the SRRL on the surrounding community.

In 2016, DEQ issued IWS a notice that it was in violation of certain provisions of Idaho law and other administrative rules regarding the operation of the SRRL, including as it pertains to the disposal of tires. Eventually IWS and DEQ entered into a consent order (the "2017 Consent Order") which required, among other things, the disposal of waste tires currently stored at the SRRL in accordance with an approved Waste Tire Volume Reduction and Management Plan ("WTVRMP"). Also within the 2017 Consent Order was a provision that IWS not accept any new tires moving forward.

In 2018, CWT, LLC began negotiations to acquire the SRRL.[1] In preparation for the acquisition, CWT contracted with a recycling facility—Second Life Recycling—to process and dispose of tires once it acquired the SRRL. CWT assured DEQ it could dispose of the tires located on the SRRL once it took over management.

In January of 2019, CWT and IWS executed a contract for the purchase and sale of the SRRL. IWS then breached the contract and refused to follow through with the sale.

---

[1] It appears CWT, LLC is a single-purpose LLC formed by IRWS to acquire the SRRL.

MEMORANDUM DECISION AND ORDER – 2

During this same time in 2019, DEQ issued another notice of violation to IWS. Following negotiations, DEQ and IWS entered into another consent order (the "2019 Consent Order"). This order prohibited IWS from accepting any new tires and tire-related products. This order also extended the deadline of the 2017 Consent Order and WTVRMP and mandated that all activities—i.e. the disposal of those existing or "legacy" tires—be completed by October 31, 2020.

In early 2020, CWT filed a lawsuit for specific performance against IWS related to their breach of the purchase and sale agreement. Ultimately the parties settled and IWS transferred the SRRL to CWT. IRWS then acquired CWT. As a condition of approval to acquire the appropriate licensure, IRWS assumed the obligations of the 2019 Consent Order (which, in turn, included certain provisions from the 2017 Consent Order).

IRWS also acquired Second Life Recycling during this time, amended the prior disposal plan so that it could accept new tires, and told DEQ it would dispose of all tires that were already on the property within two years.

Unbeknownst to IRWS however, IWS had—before the sale and in violation of the 2017 Consent Order with DEQ—continued to accept tires for disposal and had also buried some 300,000 tires on the property.

When IRWS received reports from employees that tires were buried on-site and that the waste tire processing equipment was in disrepair, it notified DEQ.

On March 13, 2023, Elmore County issued IRWS a Notice of Violation alleging that: (1) IRWS had failed to comply with the 2017 Consent Order and 2020 WTVRMP by not completing the processing and disposal of all legacy tires by November 1, 2022; (2)

the SRRL had accepted additional tires in violation of the 2019 Consent Order; (3) undisposed of tires at the SRRL constituted "a public health and safety emergency based on potential fire hazard and potential contamination of ground and surface water;" and (4) IRWS had failed to provide a cash bond in accordance with Idaho Code § 39-6502(e). Dkt. 1, at 10; Dkt. 15-2, at 29.

Negotiations followed. Among other things, it came to light that Second Life Recycling—the tire disposal company IRWS purchased—had, prior to its acquisition, been served with a Notice of Pending Action against its own CUP which prevented it from processing tires. IRWS had no knowledge of this pending action. But it was, in part, because of this pending action, that IRWS was unable to process tires from the SRRL in a timely manner and comply with the Consent Orders and WTVRMP. In the absence of Second Life Recycling's services, IRWS began outsourcing the disposal of these tires to a company in Oregon.

For months, counsel for IRWS and counsel for Elmore County emailed back and forth about the issues and legal claims and how IRWS could maintain compliance.

On August 7, 2023, Elmore County issued a second Notice of Violation to IRWS. This Notice included eight alleged violations related to tire disposal, including the failure to remedy the violations identified in the March 2023 Notice.

Again, counsel for both parties argued back and forth for months about the accuracy of the purported violations, the extent to which IRWS was actively trying to remedy the violations, and the best way to proceed.

Eventually, on August 25, 2023, IRWS received a Notice of Revocation of its CUP.

This Notice stated that IRWS had failed to remedy the issues outlined in the prior Notices (from March and August) and that, following a 15-day notice period, IRWS's CUP would be revoked. The Notice also provided IRWS with the requisite 30 days to contest the proposed revocation.

IRWS again began negotiating with Elmore County. Communications deteriorated and eventually Elmore County notified IRWS of its intent to revoke the CUP on September 9, 2023, and hold a hearing on the contested revocation on September 21, 2023.

On September 9, 2023, Elmore County *did not* revoke IRWS's CUP. Again, the parties engaged in negotiations. As part of those negotiations, Elmore County outlined what procedures would be followed at the upcoming contested hearing; including that IRWS would have an opportunity to be heard and present evidence as to why its CUP should not be revoked.

On September 21, 2023, a hearing was held. IRWS presented evidence and argument in opposition to the Notice, but, ultimately, the Elmore County Planning and Zoning Commission voted to revoke IRWS's CUP.

Thereafter, Elmore County explained to IRWS its options moving forward, including that it could appeal.

On October 5, 2023, IRWS appealed.

On October 16, 2023, Elmore County issued Findings of Fact and Conclusions of Law consistent with its September 21, 2023, vote and decision.

At that point, IRWS hired outside counsel who began reviewing the processes that had been involved as part of the revocation of the CUP. IRWS sent communications to

MEMORANDUM DECISION AND ORDER – 5

Elmore County regarding certain perceived violations of process such as its failure to issue written findings of fact and conclusions of law and its failure to post meeting minutes and agendas online. It also requested a regulatory takings analysis pursuant to Idaho Code.

This caused another round of emails and negotiations between counsel and delayed any further meetings on IRWS's appeal. Elmore County eventually posted minutes, among other documents, online. It also rejected IRWS's contention that it was required to produce a regulatory takings analysis before revoking IRWS's CUP.

Ultimately, IRWS's appeal was noticed up for a hearing on November 3, 2023.

On November 2, 2023, IRWS filed the instant lawsuit. Dkt. 1. In its Complaint, it alleges two causes of action. First, IRWS claims a Due Process violation under the Fifth and Fourteenth Amendments based upon perceived deficiencies in the way Elmore County handled the revocation of its CUP. *Id*. at 31–32. Second, IRWS claims a violation of the Idaho Constitution under the same theory—that it was deprived of property without due process of law. *Id*. at 32.

On November 3, 2023, Elmore County heard IRWS's appeal and affirmed the prior decision to revoke its CUP.

On November 8, 2023, IRWS filed its Motion for Preliminary Injunction seeking to enjoin Elmore County from revoking the CUP. Dkt. 4.[2]

On November 13, 2023, IRWS served Defendants in this case. Dkts. 7–10.

---

[2] There has been some procedural confusion about this case. IRWS did not file a Motion to Expedite, a Motion for Ex Parte relief, or any type of motion alongside its Motion for Preliminary Injunction that would have required immediate action by the Court. IRWS's law firm, however, repeatedly called the Court inquiring when it would issue a ruling. The Court's law clerk indicated action would be taken in accordance with the federal rules of civil procedure and the timing of the action depended on the form of the filings.

On November 15, 2023, Elmore County filed a lawsuit in Idaho State Court against IRWS.[3] They also filed an ex parte motion for TRO asking the state court to enjoin IRWS from operating the SRRL. The state court granted the TRO on November 17, 2023, and set the matter for a hearing on November 28, 2023.

On November 20, 2023, Elmore County appeared in this case and filed a Motion to Dismiss. Dkt. 15. IRWS filed a Motion for Temporary Restraining Order that same day alleging Elmore County did not tell the state court about this pending lawsuit and asking the Court to enjoin Elmore County immediately because it is now suffering a continued economic harm because it cannot operate the SRRL considering the state court TRO in effect. Dkt. 17.[4]

The Court then scheduled this matter for a hearing. Dkt. 20.

On November 28, 2023, the state court heard oral argument on Elmore County's Motion for Preliminary Injunction. Afterwards, that court extended the previously issued TRO until December 13, 2023, set a hearing on IRWS's Motion to Dismiss, and re-set the hearing on Elmore County's Motion for December 12, 2023, after being advised by counsel

---

[3] Elmore County subsequently filed a Motion for Judicial Notice asking the Court to take notice of the state court filings and certain other documents from those proceedings in Elmore County. Dkt. 16. Insofar as the majority of these filings are documents in the public record—or are otherwise provided for context—the Court will grant the motion and notice the filings. It will not, however, convert the present motion into a motion for summary judgment. Nor need it. The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming a motion to dismiss into a motion for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866, n.1 (9th Cir. 2004).

[4] Again, calls from IRWS's law firm persisted and eventually the Court held a status conference to confirm that nothing would happen in an expedited fashion in this case because IRWS's motions did not require the same. Regardless, the Court and counsel agreed to a truncated briefing schedule and set a hearing at the Court's next availability.

MEMORANDUM DECISION AND ORDER – 7

that this Court was set to hear two similar motions on December 7, 2023.

As planned, oral argument in this case was held on December 7, 2023, and the Court took the matters under advisement pending a written ruling.

On December 14, 2023, the state court denied IRWS's Motion to Dismiss Elmore County's Complaint, denied Elmore County's request to extend the TRO, and stayed the entire case pending resolution of the matters in this forum. Dkt. 29.

### III. LEGAL STANDARD

#### A. Preliminary Injunction

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) likely irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities weighs in favor of an injunction; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20.

#### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (cleaned up). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing

that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1122.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In cases decided after *Iqbal* and *Twombly*, the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See, e.g.*, *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

### IV. ANALYSIS

The parties competing motions—for preliminary injunction and to dismiss—are interwoven. For ease, the Court will structure the decision based upon the preliminary injunction framework but analyze Elmore County's dismissal arguments in tandem.

Again, IRWS has two causes of action. Both are based on the idea that it has been deprived of a property right—its CUP—without due process of law under the United States

Constitution and the Constitution of the state of Idaho.

### A. Success on the Merits

*1. Count I – Federal Due Process*

In its first cause of action, IRWS asserts Elmore County's conduct has violated, and continues to violate, its right to be protected from an unlawful deprivation of its property. Dkt. 1, at 31.

The Fifth Amendment to the United States Constitution provides, in relevant part, that, "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Similarly, the Fourteenth Amendment to the United States Constitution provides, in relevant part, that, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. "The Due Process Clause of the Fourteenth Amendment may give rise to claims under § 1983 for violation of (1) substantive due process and (2) procedural due process." *FlightCar, Inc. v. City of Millbrae*, 2014 WL 2753879, at *3 (N.D. Cal. June 16, 2014) (*citing Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

"The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (cleaned up). A substantive due process claim arises from "a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). On the other hand, a "§ 1983 action may be brought for a violation of procedural due process" where the government deprives the plaintiff of a constitutionally protected interest in life, liberty,

or property without due process of law. *Zinermon*, 494 U.S. at 125. The threshold issue, however, is whether a plaintiff has asserted a protected property or liberty interest. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 569–72 (1972). This threshold inquiry is where IRWS's case begins and ends.

IRWS asserts it has a high likelihood of success on this claim because the Ninth Circuit has "long recognized that constitutionally protected property rights adhere not only in land, but in conditional use permits which allow particular uses of that land." Dkt. 6, at 4–5. It then cites a 1986 case from the Ninth Circuit—*Kerley Industries, Inc. v. Pima County*, 785 F.2d 1444, 1446 (9th Cir. 1986)—in support of this position. IRWS basis its argument in support of a TRO almost entirely on this case. But the argument is misplaced.

In *Kerley*, the Ninth Circuit held that *Arizona* law recognized a property right in conditional use permits. Applying that Arizona law, the District Court in Arizona—and then the Ninth Circuit—found Defendants in that case could not take that state right away arbitrarily. *Id*. But the facts of this case differ from those present in *Kerley*.

First, there is no legitimate claim of entitlement to a conditional use permit under Idaho law. To be sure, Idaho (like Arizona) has a regulatory scheme for obtaining CUPs. For example, Idaho Code Section 67-6512(a) outlines that CUP's "may be granted" and explains under what circumstances those permits may issue. The use of the word "may" is permissive and does not automatically vest an entitlement property right in the holder of the CUP. Said another way, Idaho has never recognized a full-blown property interest in a CUP itself. *See Mountainwest Ventures, LLC v. City of Hope,* 2015 WL 222448, at *3 (D. Idaho 2015) (plaintiff's due process claim was dismissed as "fatally defective" because

plaintiff did not have a constitutionally protected interest in a CUP under Idaho statute and local ordinance); *Bracken v. City of Ketchum*, 537 P.3d 44, 62 (Idaho 2023) (holding property owner had "no claim under either a procedural or substantive due process theory because he had 'no legitimate claim of entitlement' to a permit that the City had discretion to deny in a reasonable exercise of its discretion") (cleaned up). And this principle is not unique to Idaho. *See Oregon Ent. Corp. v. City of Beaverton*, 233 F. App'x 618, 619 (9th Cir. 2007) (noting the type of property interest in a conditional use permit that would rise to the level of a federally protected property interest is only satisfied when the "relevant state law provisions truly make the conferral of the benefit *mandatory*") (cleaned up).[5]

Second, Elmore County Code outlines the discretionary nature of CUPs and further describes that awarded CUPs are subject to "revocation for non-compliance with their terms and conditions." Elmore County Code Section 7-16-5.

Finally, the plain terms of the CUP in this case make clear that, "[i]n the event of substantial and sustained failure to abide by the material terms of this conditional use permit, [the] County may revoke the permit granted hereby." Dkt. 23-1, at 31.

In sum, the Court finds IRWS *does not* have a protected property interest in its CUP. Idaho law, local law, and the CUP itself make clear the CUP is discretionary and contingent upon compliance. This defeats IRWS's due process claim—substantive and procedural—

---

[5] IRWS takes issue with these cases because they dealt with the *issuance* of a CUP as opposed to the *retention* of a CUP. The Court does not see a material difference. The dispute is not whether the holder of a CUP has *more* of an interest than someone applying for a CUP, but how that interest arose. It is undisputed that the granting of a CUP under Idaho law—and, as will be explained, under Elmore County Code and the terms of the CUP itself—is discretionary. This discretionary language does not make the benefit mandatory and defeats IRWS's argument.

at the outset.

However, even setting all of this aside, and assuming arguendo that IRWS had a protected property interest in its CUP, it would still not be enough to succeed on a procedural due process claim. The point of the *Kerley* decision was not that the Plaintiff had a protected property interest under Arizona law *in the abstract* but rather that the law "contain[ed] detailed provisions for the[] suspension and revocation" of CUPs which "trigger[ed] the constitutional requirements of due process." *Kerley*, 785 F.2d at 1446. Said differently, even if there was a protected property interest at stake here, that interest could still be revoked assuming the correct processes and procedures were followed.

The initial evidence in this case does not support IRWS's theory that it has been deprived any process or that it could prevail on this claim. To the contrary, it appears there has been a lot of processes involved.[6] The Court returns to Elmore County Code 7-16-5 which outlines that: "If the Director determines that a permit has been violated he/she shall notify the permit holder of his/her intention to revoke the permit and provide the permit holder the opportunity to contest the revocation." That happened in this case. Furthermore, the Code mandates that, "The permit holder notified by the Department of the intent to revoke shall have thirty (30) days to contest the revocation of the permit by filing a letter of contest and paying a fee established by the Board." *Id*. That happened in this case. "The Commission shall conduct a public hearing in accordance with this Ordinance for all

---

[6] The background section of this decision was based almost exclusively off IRWS's complaint. By its own admissions, there has been an abundance of processes, negotiations, and meetings with Elmore County *prior* to the revocation of its CUP.

contested revocations." *Id.* At any such proceeding, "the Commission shall hear evidence from the Director and any other party regarding the alleged violations and why the permit should be revoked. The permit holder shall have the opportunity to provide evidence contesting the violations and why the permit should not be revoked." *Id*. That occurred here. "After hearing evidence, if the Commission upholds the Director's determination of violation it may revoke or modify the permit or find that there was not sufficient evidence to revoke the permit. [Any such decision] may be appealed to the Board in accordance with the provisions of this Ordinance." *Id*. This happened here as well.

And from the CUP: "If [the County] intends to [revoke the CUP], it shall notify IWS of its intent to consider permit revocation at least 15 days prior to the date at which action shall be taken." Dkt. 23-1, at 31. That notice was provided in this case.

In sum, IRWS was given notice of its violations, it was given notice of Elmore County's intent to revoke its CUP, it was giving notices of hearings, notice of appeals, and opportunities to present its position throughout every step of this process. It appears that, in addition to the statutorily required meetings, there have been more than fifty informal meetings (as well as countless emails and phone conversations between IRWS and Elmore County) discussing the alleged violations and how to achieve compliance. Elmore County also informed IRWS of its rights and options throughout the process. This is not a situation like *Kerley* where one party summarily and arbitrarily took away another party's permit. IRWS has been involved from the get-go. IRWS may disagree with the outcome of the process, or even the process itself, but it cannot claim to have received *no* process, nor can its disagreement with the process (or outcome) rise to the level of a constitutional violation.

MEMORANDUM DECISION AND ORDER – 14

*See Summers v. City of McCall*, 84 F. Supp. 3d 1126, 1148 (D. Idaho 2015) (noting that, although the plaintiff disagreed with the process and outcome, such did not demonstrate that "the City failed to satisfy the essential due process demands of notice and an opportunity to be heard").

In short, it does not appear IRWS could succeed on its procedural due process claim even if the Court assumed a property interest.[7]

The question then, is not whether these claims are just unlikely (in the preliminary injunction context), but whether they are so lacking in support as to warrant dismissal (in the motion to dismiss context).

The Court agrees with Elmore County that IRWS has not sufficiently pleaded Count I and that dismissal is appropriate. It also agrees that dismissal with prejudice is appropriate. The Court typically follows the long-recognized standard from the Ninth Circuit that dismissal should be without prejudice unless it is beyond doubt the complaint

---

[7] Within this claim, IRWS seems to also be raising a substantive due process claim. But it is difficult to ascertain how it believes Elmore County fell short on this wise. It appears to be contesting: (1) the fact that the Elmore County Board of Commissioners "adopted" the recommendation from the initial hearing without further involvement from IRWS, and (2) Elmore County's position that a regulatory taking had not occurred and, therefore, it was not required to provide such an analysis to IRWS. Both contentions are more fact-driven than the Court's prior comments, but still do not show a likelihood of success. First, Elmore County issued findings of fact and conclusions of law as it pertained to the revocation of IRWS's CUP. It then heard IRWS's appeal and affirmed. IRWS was involved at each juncture. None of Elmore County's actions were arbitrary or shocking. *See U.S. v. Salerno*, 481 U.S. 739, 746 (1987) (explaining that, in order to plead a substantive due process claim, a plaintiff must allege facts showing the Defendants "engag[ed] in conduct that shocks the conscience or interferes with the implicit concept of ordered liberty") (cleaned up). Second, IRWS's complaint is lacking in any authority supporting the idea that a city's decision to revoke a CUP based upon failures to abide by federal and state law—and as specifically allowed under Idaho law, local ordinance, and the terms of the document itself—constitutes a property taking in violation of the Fifth Amendment and mandates a regulatory takings analysis. Thus, here too, the Court finds a substantive due process violation unlikely. IRWS has broadly argued that Elmore County engaged in "a concerted effort to destroy a multimillion-dollar business based on nothing more than fictitious or trumped-up alleged violations and their own constitutionally impermissible animus toward the business." Dkt. 24, at 15. But these broad allegations are insufficient to support a substantive due process claim.

could not be saved by an amendment. *See Harris*, 573 F.3d at 737. But it is clear amendment cannot save this claim because this is not a situation where more (or different) facts could change the outcome. This is a legal conclusion. Nothing will change the fact that Idaho does not recognize a protected property interest in discretionarily issued CUPs.[8] S*ee Mountainwest Ventures*, 2015 WL 222448, at *4 (noting that, because there was no way Plaintiff "could amend its complaint to allege a protectable property interest" the Court was within its rights to "dismiss th[e] claim without leave to amend"). The Court will dismiss Count I with prejudice and without leave to amend.

### 2. *Count II – State Due Process*

In its second cause of action, IRWS argues Elmore County has violated Article I, Section 13 of the Idaho Constitution which provides that no person shall be deprived of property without due process of law. Dkt. 1, at 32.

As this court recently noted, "this question has been clearly decided in this District. There is no direct cause of action for violations of the Idaho Constitution." *Dreyer v. Idaho Dep't of Health & Welfare*, 455 F. Supp. 3d 938, 944 (D. Idaho 2020) (cleaned up). On

---

[8] Again, the Court must address some ancillary issues. First, Elmore County claims the commissioner Defendants must be dismissed because they have qualified immunity. Second, it notes that IRWS alludes in passing, in its Complaint, to "an official policy" in Elmore County that was the basis for the harms it has suffered. Dkt. 1, at 32. Elmore County contends that, to the extent IRWS is trying to bring a respondeat superior (or *Monell*) claim, they have failed. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). In response, IRWS avers the commissioner Defendants are *not* entitled to qualified immunity because they were violating clearly established law by following an errant policy of asserting baseless violations against IRWS and that policy is sufficient to also support a *Monell* claim. The Court agrees with Elmore County: IRWS's vague references to a policy cannot satisfy the *Monell* elements to a sufficient degree. And without allegations that there is a policy or custom that might rise to the level of a *Monell* claim, qualified immunity applies and protects the individual commissioner Defendants. The Court need not affirmatively rule on these arguments as it is dismissing this case for a more fundamental reason; nonetheless, it wanted the parties to know its thoughts on these issues for any proceedings that may follow.

this ground, Elmore County asks the Court to dismiss Count II outright.

In response, IRWS recognizes the relevant caselaw and "voluntarily withdraws its claim for monetary damages" under the Idaho Constitution. Dkt. 24, at 17. Somewhat confusingly, however, it maintains the claim "for the purposes of seeking injunctive and declaratory relief." *Id*. at 18. Elmore County returns by asking the Court to refrain from leaving this claim active, in whole or in part, because there is still no evidence that there is a private right of action for a violation of the Idaho constitution—whether for monetary damages or injunctive relief.

The Court agrees. First, regardless of how one frames the cause of action, it does not change the notion that a violation of the Idaho Constitution cannot act as a stand-alone claim. Second, however, insofar as the Court has found there is no protectable property interest at stake under the Fifth and Fourteenth Amendments, the same applies under the Idaho Constitution as well. Where there is no protectable property interest, there is no violation in its revocation.[9] This claim must also be dismissed with prejudice.

### B.  Remaining *Winter* Factors

Both parties assert the remaining factors necessary to achieve a preliminary injunction—irreparable harm, balance of equities, and public interest—weigh in their favor. In particular, IRWS alleges that it is suffering a continued harm in not being able to operate the SRRL and generate revenue. It also alleges the citizens of Elmore County are

---

[9] But, again, even assuming there was such an interest under the Idaho constitution, the remedy would not be to automatically grant the request, but to review the process to determine if Elmore County met the minimum standards of notice and an opportunity to be heard. *See Summers v. City of McCall*, 84 F. Supp. 3d at 1148. As explained above, they cleared that bar in this case.

MEMORANDUM DECISION AND ORDER – 17

suffering because they now must pay higher fees to dispose of their waste and tires and it is in the public interest to enjoin Elmore County's decision to revoke its CUP during the pendency of this suit. It also highlights the economic harms its employees face.

The Court sympathizes with the real-world consequences that have occurred because of this dispute. At the expense of sounding heartless, however, it need not consider them further. As a general matter, district courts "*must* consider" all four *Winter* factors. *Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 577 (9th Cir. 2014) (emphasis added). That said, the first factor "is a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020). Thus, if a movant fails to show a likelihood of success on the merits, the Court "need not consider the other factors . . . ." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

Here, because the Court finds IRWS cannot prevail on its claims as a matter of law under the first factor, it need not address the remaining factors.

///

///

///

///

///

///

MEMORANDUM DECISION AND ORDER – 18

## V. ORDER

1. IRWS's Motion for Preliminary Injunction (Dkt. 4) and Motion for Temporary Restraining Order (Dkt. 17) are DENIED.

2. Elmore County's Motion to Dismiss (Dkt. 15) is GRANTED.

3. Elmore County's Motion for Judicial Notice (Dkt. 16) is GRANTED.

4. This case is DISMISSED with prejudice and CLOSED.

5. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: December 21, 2023

David C. Nye
Chief U.S. District Court Judge